THE PEOPLE, APPELLANT, *v.* THE REGISTRAR OF SAN JUAN, SECTION 1, RESPONDENT.

APPEAL from a Decision of the Registrar of Property Denying Admission to Record of a Lease of Mangrove Swamp Land.

No. 238.—Decided July 16, 1915.

APPEAL — ADMINISTRATIVE DECISION — ACQUIESCENCE. — When an administrative decision is acquiesced in by the appellant he must abide by the consequences of·his own acts.

ID.—ID.—DISMISSAL OF APPEAL—PARTIES.—The dismissal of an administrative appeal for failure of the appellant to bring the same in time is understood to be without prejudice to the rights of other interested parties who have not·applied to the registry for admission of the same instrument or taken an administrative appeal from the decision of the registrar.

MANGROVE SWAMP LANDS—LEASE OR SALE—COMMISSIONER OF INTERIOR.—According to the laws in force and particularly the Act of March 11, 1909, the Commissioner of the Interior of Porto Rico, who is the proper official for that purpose, is expressly authorized, with the approval of the Executive Council, to lease for such a term as he may think proper or sell the mangrove shores or swamp lands around the Bay of San Juan belonging to The People of Porto Rico, and the general provision of section 1451 of the Civil Code is not applicable to the case.

LEASE—FIXED RENT.—A fixed rent is an essential requisite in all contracts of
lease and may consist of a sum of money expressly agreed upon to be paid
at specified times, as is usually the case, or of an evident material compen-
sation to be received by the lessor from the lessee for the use of the property
leased, as in this case.

SALE—LEASE—EXEMPTION FROM PAYMENT OF TAXES.—In order that lands sold
by The People of Porto Rico may be exempted from the payment of taxes,
such exemption must be expressly stipulated by the authority having that
power; but when The People only leases its property, no express stipulation
of exemption from the payment of taxes is necessary. In case of sale The
People relinquishes the ownership, while in case of lease it holds the same
and receives a fixed rent in exchange for the use of the property.

The facts are stated in the opinion.

*Mr. Howard L. Kern,* Attorney-General, for the appel-
lant.

Mr. José S. Belaval, the registrar, appeared by his sub-
stitute, Mr. Emigdio S. Ginorio.

MR. JUSTICE DEL TORO delivered the opinion of the court.

Before going into the decision of the questions involved
in this administrative appeal we should refer to the opinion
of this court in the case of *Behn* v. *The Registrar of Prop-
erty,* 21 P. R. R., 486. The Commissioner of the Interior
of Porto Rico and Hernand Behn executed a certain public
instrument for the lease of a tract of mangrove shore on
the Bay of San Juan. Lessee Behn presented the contract
in the registry for record and the registrar refused the same
for the reasons stated by him in his decision of June 15, 1914.
The lessee did not appeal from the said decision within the
time fixed by law.

The case being thus, the said contracting parties executed
another public instrument ratifying and explaining more fully
the conditions of the original contract of lease and the lessee
presented the same in the registry of property. By a deci-
sion of August 24, 1914, the registrar held that the new instru-
ment cured only certain defects, but not others of a funda-
mental nature pointed out in his decision of June 15, 1914.
Thereupon the lessee appealed to this court from both deci-
sions of the registrar.

In considering the appeal taken by the lessee, this court, in accordance with its own jurisprudence, considered and decided only whether or not the interested party had corrected the defects assigned by the registrar in his decision of June 15, 1914, inasmuch as the said decision had been acquiesced in by the appellant who should abide by the consequences of his own acts. *Behn* v. *Registrar of Property, supra.* Applying that rule, this court could not decide the questions really most important involved in the appeal, a fact which led us to make the following remark in the opinion then delivered:

"In the interest of justice we should state also that the decision of the registrar in this case binds the lessee who presented the document and consented to the decision, but does not bind the lessor who did not intervene in any way in the registry. This question is settled both by law and jurisprudence. Article 6 of the Mortgage Law; *Colonial Company* v. *The Registrar,* 1 D. P. R., 396, 401."

After some time had elapsed the lessor presented the said instruments in the registry and the registrar again refused to record them for the reasons stated in the following decision from which the lessor, represented by the Attorney-General of Porto Rico, took the present appeal:

"The foregoing instrument, deed No. 5, executed in this city before Notary Robert H. Todd on May 21, 1914, considered in connection with deed No. 64 executed in this city before Notary Herminio Díaz Navarro on July 29, 1914, is denied admission to record on account of the following defects:

"1. The Commissioner of the Interior is not empowered to execute a contract of lease for more than six years, according to section 1451 of the Civil Code, or for more than fifteen years, with the approval of the Executive Council, under section 135 of the Political Code, inasmuch as the Act to authorize the lease or sale of the swamp lands around the Bay of San Juan, approved March 11, 1909, does not confer that power upon him expressly, as is required by section 1451 of the Civil Code, which is the statute governing this matter; and it is a rule of construction that an express prohibition is not understood to be repealed except when the Legislature so determines in an express manner.

"2. Sections 1 and 12 of the said act only empower the Commissioner of the Interior to lease or sell all or part of the mangrove swamps and the terms of the foregoing instrument are not those of a contract of sale or of lease of the said land; for, as regards the latter, no specific rent or consideration is fixed for the use and enjoyment of the thing said to be leased, therefore there is lacking one of the essential requisites of a contract of lease, as prescribed by section 1446 of the said Civil Code now in force.

"3. The condition prescribed in section 2 of the said act has not been expressly and clearly complied with; for the lessee, in clause 2 of the lease, contracts only the vague and uncertain obligation to reclaim the land.

"4. The authority conferred by section 12 of the said act to lease or sell a tract of the mangrove swamps is limited to cases where the said leasing or sale is desirable for the reasons stated in the said section, and these reasons are not stated in the foregoing instrument.

"5. According to the law applicable to the case, the Commissioner is not authorized to create the servitude provided for in clause 14.

"6. The exemption from the payment of taxes granted in clause 7 is not authorized by section 3 of the said Act of March 11, 1909.

"7. The agreement embodied in the last part of clause 9 of the lease is not authorized by the said Act of March 11, 1909.

"In accordance with the decision of the General Directorate of Registries of Property and Notarial Instruments of March 30, 1878, and the jurisprudence followed by the Supreme Court of Porto Rico in the case of *Barreras* v. *The Registrar of Property,* 15 P. R. R., 542, no cautionary notice is entered.'''

Let us consider the grounds on which the registrar bases his refusal in the same order in which they appear in his decision, but first we will summarize the contents of the instruments of May 21 and July 29, 1914.

The first was executed before Notary Robert H. Todd by Ernest S. Wheeler, Assistant Commissioner of the Interior acting as Commissioner by reason of the vacancy of said office, and Hernand Behn, who converted into a public instrument and ratified a contract of lease which they had entered into on November 12, 1913. The leased property consists of a tract of mangrove shore belonging to The People of Porto Rico situated east of the San Antonio Dock on the Bay of

San Juan and the terms and conditions of the contract may be summarized as follows:

1. A term of thirty years beginning November 12, 1913, no rent to be paid by the lessee, his successors or assigns, provided the other conditions of the lease are complied with by them.

2. The lessee must build a line of docks or a sea-wall, dredge the channel and reclaim the land in the manner specified, a sum of not less than $105,000, United States currency, to be expended on the said improvements.

3. Said lessee shall begin the specified improvements within four months from the date of the contract and shall complete the same within two years from the said date, "it being understood and agreed that the said conditions as to the dates of commencement and completion of said construction are substituted by the conditions set out in paragraph 1 of the *Suspensory Conditions of the Lease,* a copy of which is made a part of the original proposition submitted by the said lessee for the lease of the said land."

4. The lease shall not begin to take effect until the lessee has completed the work agreed on and the same has been accepted by the San Juan Harbor Board.

5. All the reclaimed land, the sea-wall and the dredging improvements shall become the property of the Insular Government, free of charges, at the termination of the contract.

6. The buildings which the lessee may construct on the land shall belong to him provided that he remove them within the four months following the expiration of the contract. Otherwise they shall become the property of the Insular Government, free of charges.

7. The leased property and improvements shall be exempt from the payment of taxes, but all other constructions on the reclaimed land shall be subject to taxation.

8. The lessee shall make all the repairs ordered by the San Juan Harbor Board and shall deliver the leased property to the Insular Government in good condition.

9. Said lessee shall construct and maintain, during the life of the lease, a permanent sea-wall on the water front of the leased land, subject to the conditions specified; and it is further stipulated and agreed that "the lessee shall construct a temporary sea-wall on that part of the property facing the San Antonio Channel, it being understood and agreed that at any time up to five years preceding the expiration of the lease the said lessee, if he wishes, may make a supplementary proposal to the Executive Council of Porto Rico to construct a permanent sea-wall in place of the temporary one in consideration of an extension of the duration of this lease, which proposal the Executive Council may accept or reject at its discretion.

10. During the life of the contract the lessee shall dredge and maintain a channel thirty meters wide and of a depth not less than that fixed in the plan of "San Juan Harbor Improvements" along the length of the permanent sea-wall constructed by him.

11. The lessee shall reclaim and maintain the leased property at a level of not less than 1.05 meters above low-water mark.

12. The lessee shall not begin the improvements without first securing the consent of the San Juan Harbor Board.

13. The dock and the proposed space for a street at the end and close to the edge of the pier east of the San Antonio Dock (plan of San Juan Harbor Improvements) shall not be leased and the sea-wall of the said section shall be built by the Insular Government when it deems it advisable, and the lessee shall not be entitled to make a claim for its failure to construct the same.

14. Within two years from the date of the contract the lessor shall grant the lessee "a right of way to the said leased property at such a place as may secure to the lessee reasonably safe and convenient access to the said property, provided that the said right of way shall be granted over land belonging to the Insular Government."

15. The lessee shall use the property as a depot for the storage and sale of coal, oil, etc.

16. Equal rights shall be granted to all prospective purchasers of the said articles "under a schedule of prices fixed by the grantee according to the quantity purchased."

17. All vessels shall have equal rights to dock at the depot and "take coal or other articles at uniform prices according to the amount purchased."

18. The consent of the lessee must be obtained for docking.

19. In cases of emergency vessels belonging to the Government of the United States shall have preferred rights to use the depot, free of charges.

The second intrument, or that of July 29, 1914, was executed by the same parties before Notary Herminio Díaz Navarro, and it was set out therein that the lease of the tract was made at public auction under the conditions stated in the document attached to the public instrument; that Hernand Behn was the only bidder at the said auction and a copy of his bid was also attached to the instrument; that by virtue of the public auction the contract of lease of November 12, 1913, was executed and the same was incorporated in and ratified by the public instrument of May 21, 1914, and that the contract was authorized by the Executive Council at a public session held on October 23, 1913, according to a document also attached to the public instrument.

The third, fourteenth and ninth clauses of the instrument executed on May 21, 1914, were explained in the instrument of July 29 of the same year, as follows: That the said "suspensory conditions of the lease," referred to in the third clause, were the conditions set out in a writing which was attached to the instrument and that it showed that the lease in question was in the interest of the public, inasmuch as the lessee agreed to invest a large sum of money in the reclamation of lands at present worthless, which reclaimed lands would subsequently become the property of The People of Porto Rico; that, as to the fourteenth clause, the right of way

which the lessor agrees to grant to the lessee is based on the obligation imposed by section 574 of the Civil Code, as the tract leased has no other outlet than over the lands of The People of Porto Rico which comprise the remainder of the property from which it has been segregated; and that as to the ninth clause, what is agreed upon is the conformity with plans made by the Department of the Interior for reclamation, dredging and building of docks in the harbor of San Juan.

1. Let us see whether the Commissioner of the Interior is empowered to lease the property in question for more than six years.

The office of Commissioner of the Interior was created by the Organic Act of Porto Rico. Section 24 of the said act reads as follows:

"That the Commissioner of the Interior shall superintend all works of a public nature, and shall have charge of all public buildings, grounds and lands, except those belonging to the United States, and shall execute such requirements as may be imposed by law with respect thereto, and shall perform such other duties as may be prescribed by law, and make such reports through the Governor to the Secretary of the Interior of the United States as he may require, which shall annually be transmitted to Congress."

In 1902 the Legislature of Porto Rico prescribed expressly the powers of the Commissioner, acting on the basis previously established by the Congress of the United States. Sections 133 to 137, both inclusive, of the Political Code.

Section 135 of the said code reads as follows:

"The Commissioner of the Interior may, with the approval of the Executive Council, provide for the leasing, for a period not exceeding fifteen years, and, with the consent of the Legislative Assembly, for the sale of all lands heretofore, or which may hereafter be granted to the Island of Porto Rico by the United States or otherwise."

In 1909 the Legislature of Porto Rico deemed it essential for contributing to the improvement of the harbor of San Juan to authorize the lease or sale of the mangrove swamp

lands around the bay, and for that purpose passed the nec-
·essary act. Sections 1, 2, and 12 of the said act (Acts of
1909, page 202), which are the sections closely related to this
·case, read as follows:

"Section 1.—The Commissioner of the Interior, with the approval
·of the Executive ·Council, is hereby authorized and empowered to
lease, for such term of years as the circumstances in each case shall
make desirable, or sell at public auction all the swampy lands or
marshes belonging to The People of Porto Rico and which surround
the Bay of San Juan.
"Section 2.—All leases or sales carried out pursuant to the pro-
visions hereof shall be made upon the condition that the lessee' or
buyer shall reclaim the tract leased or sold to him within a fixed term
of years, which term shall be set forth in the lease or deed of sale,
and non-compliance with this condition shall be sufficient cause for
cancelling the lease, or, in case of sale, for the Government of Porto
Rico, through the Commissioner of the Interior with the approval
of the Executive Council, requiring the redeeding of the property
to The People of Porto Rico, upon such conditions as circumstances
at that time may be deemed to be just and equitable.
"Section 12.—In addition to the power herein conferred upon
him to sell by public auction swampy lands around the Bay of San
Juan, the Commissioner of the Interior, with the approval of the
Executive Council, shall also have the power to lease or sell any of
said lands by direct negotiation without resort to a public auction
where the leasing or sale of said lands is desirable in connection with
the granting of any franchise, or where it is plainly in the interests
·of the public that a lease or sale of any of said lands should be made
in this manner, and such lease or deed of sale shall contain such stipu-
lations relative to the duration of the lease, the improvements that
·shall be made upon the lands leased or sold, the use to which such
lands shall be devoted and any other conditions which shall be deemed
·to be in the interests of the public."

As may be seen from the provisions of the act cited, the·
·Commissioner of the Interior of Porto Rico, the proper offi-
·cial· for that purpose, is expressly authorized, with the ap-
-proval of the Executive Council, to lease or sell the man-
·grove swamp lands around the Bay of San Juan belonging
·to The People of Porto Rico. And in our opinion the au-

thority given him by the said special act is sufficient to permit him to lease the said mangrove or swamp lands for the number of years he may deem proper, the general provision of section 1451 of the Civil Code relied on by the registrar in his decision not being applicable to this case, which is expressly provided for by the Legislature. The lease of the mangrove lands around the Bay of San Juan should be governed by the said Act of March 11, 1909, which was passed expressly for that purpose by the Legislature.

2. Can the contract under consideration in this case be called a lease? The registrar contends that it cannot because it lacks one of the essential requisites of a lease prescribed by section 1446 of the Civil Code, *i. e.*, a fixed price for the use or enjoyment of the property leased.

In fact, section 1446 prescribes that "In a lease of things, one of the parties thereto binds himself to give to the other the enjoyment or use of a thing for a specified time and a fixed price."

Now, does the fact that it is stipulated in the contract sought to be recorded in the registry that the lessee will not be required to pay any rent imply the non-existence of a fixed rent in the contract?

In our opinion it must be admitted that the said clause creates some confusion, but taking into account that the consideration for the use of the lands is the reclaiming thereof, the dredging of a canal and the construction of a sea-wall, requiring an outlay of not less than $105,000, the last question should be answered in the negative, and, consequently, the first in the affirmative.

In treating of the *rent* as an essential requisite to a contract of lease, Scaevola, on page 403 of volume 24 of his Commentaries on the Civil Code, expresses himself as follows:

"According to our way of thinking, in the matter of the rent its actual payment is not to be considered so much as the economic compensation of the benefit which the lessor grants to the lessee by

allowing him to exercise acts of ownership over his property and to receive its profits. This economic compensation, which is advantageous to both parties no matter how it may be effected, is what characterizes the *merces* in the lease because by it the contract accomplishes its purpose in social life.''

And on the point in question, Manresa, on page 451 of Volume X of his Commentaries on the same code, says:

"There has been a wide discussion as to whether the rent may be *in genere,* but distinct from that obtained from the thing, 'and while some have decided to classify such a contract as innominate, others call it a contract of lease.

"It seems to us more appropriate to follow the opinion of Pacifici-Mazzoni, who says that as a general rule whenever one party transfers the personal right to use a thing and the other transfers the ownership of something else equivalent to such use, there is a contract of lease. However, this always involves a question of evidence in which it would have to be shown whether the intention of the parties was to execute a lease or another contract of a different kind."

Moreover, the question of whether or not the contract entered into is one of lease has been raised by the registrar for the purpose of denying the right of the Commissioner of the Interior to execute the same pursuant to the Act of March 11, 1909, inasmuch as the said act refers only to contracts of sale and lease. But although it is true that the act classifies the contracts which it authorizes as contracts of sale and lease, it is also a fact that it prescribes that ''All leases or sales   *   *   *   shall be made upon the condition that the lessee or buyer shall reclaim the tract leased or sold to him within a fixed term of years, which term shall be set forth in the lease or deed of sale.''

The condition that swamp lands shall be reclaimed is not common in contracts of lease, but in this instance the Legislature took the same into account and classified the contract to be made as one of lease, imposing that condition. Hence, for the purpose of ascertaining the powers of the Commissioner of the Interior, the condition of the contract which

he is authorized to make is more important than the name given to the instrument.

It seems to us opportune to quote here also the opinion of commentator Scaevola on the question of the rent in contracts of lease, which is to be found on the same page of the same volume of his Commentaries on the Civil Code cited above:

"Taking into account the spread of economic conditions and the complexity of legal forms created thereby, these forms must be accepted and adapted to the classes to which they belong, although they may differ considerably in their incidental characteristics from the archtype. It is much less practicable to eliminate them by assigning them to the realm of innominate contracts, where an inorganic freedom opposed to the normal life of contracting reigns, than to affiliate them with a class of those which are known and organized."

3. In our opinion the defect assigned by the registrar under No. 3 does not exist. As can be deduced from the wording of the instrument, the obligations contracted by the lessee are not vague and indeterminate, but express and precise, and the contract entered into is in harmony with the letter and spirit of the act authorizing the lease or sale of mangrove swamps around the Bay of San Juan, approved March 11, 1909.

4. The documents presented in the registry reveal the existence of the circumstances referred to by the registrar in clause four of his decision of May 19, 1915.

The policy of the Government of Porto Rico with respect to the improvement of the harbor of San Juan was established by its statutes. The lands leased in this particular case are classified at present as mangrove swamp lands. The lease undoubtedly was executed in connection with the franchise granted for the building and operation of a pier. The reclamation of inundated lands on the shores of a port like that of San Juan; the construction of a sea-wall separating the water from these lands; the building and adoption of a dock for loading, unloading and storing goods, are im-

provements whose public utility is manifest; the more so when, according to the contract, they will be secured without cost to The People of Porto Rico and on the conditions that the ownership of the land does not pass from The People for a moment and that it will acquire the improvements made to the property at the end of a certain number of years. Besides, this is not a case of a lease negotiated directly by the Commissioner of the Interior, but of a lease made by means of a sale at public auction which was approved later by the Executive Council.

5. It appears to us that the explanation contained in the deed of July 29 is sufficient to show that the obligation expressly contracted in the lease with regard to the duty of granting the lessee a right of way over the lands belonging to The People of Porto Rico may be considered to a certain extent as included within the provisions of section 574 of the Civil Code.

Moreover, upon considering all the documents exhibited in this case it is observed that in executing the lease in question the plan of the improvements to the harbor of San Juan, including dredging, reclaiming, construction of sea-walls, docks, streets, etc., was taken into account, and the servitude of right of way will be subject to what was previously specified in the plan of said improvements.

6. Even if it had not been stipulated in clause seven of the contract of lease in question that The People of Porto Rico would not collect taxes on the leased property, it is very evident that taxes would not have been collected according to law because the law exempts the property of The People of Porto Rico from the payment of taxes with certain exceptions in which this case is not included. See sections 291 and 296 of the Political Code.

It is perfectly well understood that if The People *sells* its land, in order that no taxes shall be paid thereon it must be expressly exempted therefrom by the authority having that power; hence the provision of section 3 of the Act of March

11, 1909, cited by the registrar. A case of *sale* is distinct from that of a *lease*. In the former The People alienates the property and is no longer its owner. In the latter it holds the property and continues as its owner, receiving besides a fixed rent in exchange for the direct use of the property leased.

7. The stipulation contained in the last part of clause nine of the contract, which the registrar refers to in clause seven of the decision appealed from, is in harmony with the general plan of improvements of the harbor of San Juan, and, furthermore, as it imposes no obligation whatever on The People of Porto Rico, we think it cannot serve as a ground for the refusal to record the instrument presented.

In view of all the foregoing we are of the opinion that the decision appealed from should be reversed and the record ordered as requested.

*Reversed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.